**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Theodore ROBINSON, Sr.,**
**Defendant–Appellant.**

**Nos. 92–6951, 92–6991.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 31, 1995.

---

Habib Yazdtchi, Montgomery, AL, for Theodore Robinson, Sr.

Redding Pitt, U.S. Atty., Terry F. Moorer, Asst. U.S. Atty., Montgomery, AL, for appellee in No. 92–6951.

James E. Wilson, U.S. Atty., Terry F. Moorer, Asst. U.S. Atty., Montgomery, AL, for appellee in No. 92–6991.

Before EDMONDSON and BIRCH, Circuit Judges, and HILL, Senior Circuit Judge.

BIRCH, Circuit Judge:

In this appeal, we decide whether aerial surveillance of an occupied, private residence with infrared thermal detection as an indication that marijuana is being cultivated inside is an unconstitutional search. The district court denied defendant's suppression motion. We AFFIRM.

## I. BACKGROUND

In December, 1991, a Drug Enforcement Administration agent informed Agent Charles West of the Narcotics Division of the Alabama Department of Public Safety that thirty high-pressure, sodium lights had been shipped from California to defendant-appellant Theodore Robinson, Sr.'s address in Tuskegee, Alabama. Agent West knew that such lights commonly are used by private individuals for growing marijuana indoors.[1] His investigation revealed that Robinson had ordered similar lights and hydroponic equipment in 1989 and 1990.

Additionally, subpoenaed utility records showed that Robinson's average kilowatt consumption of 5,570 hours and average utility statement of $410.89 for the months of June, July and August, 1991, had increased to nearly 10,000 kilowatt hours for December, 1991, and a utility statement of $562.00. Houses approximately the size of Robinson's generated monthly power statements between $130.00 and $150.00. Agent West's investigation of Robinson's financial status showed that Robinson owned an attractive house of approximately 2,800 square feet with a swimming pool and a nearby lot containing a new, prefabricated metal building. Although Robinson paid for the high-pressure, sodium lights with a cashier's check in excess of $7,000.00, Agent West found that the Alabama Department of Revenue had no record of Robinson's having filed income tax returns.

After collecting this information, Agent West directed a helicopter crew to conduct a Forward Looking Infrared Receiver ("FLIR"), thermal imaging examination[2] to compare the heat emanating from Robinson's house with the intensity of the heat from surrounding objects. Robinson's home was considerably warmer than surrounding houses. Listing his investigatory findings, Agent West applied for a search warrant of Robinson's home. On January 31, 1992, Agent West and others executed the search warrant and found a major, indoor marijuana growing operation.[3] Two revolvers, a shotgun, and a

---

1. At the time of his involvement with Robinson's case, Agent West had twenty-two years of experience in enforcing state and federal drug laws.

2. FLIR thermal imaging is a process whereby differences in heat emissions are measured and reflected on a videotape. Heat concentration is indicated on a videotape on a spectrum of light to dark, with bright white showing intense heat. Increasingly, law enforcement personnel are using FLIR thermal imaging to detect indoor marijuana growing operations.

3. At the suppression hearing, Agent West testified that the first floor of Robinson's home contained "a cloning room" with "a large number of [marijuana] plants," and that three upstairs bedrooms were "full of [marijuana] plants with lights." R3–9. A consensual search of the prefabricated metal building revealed no evidence of marijuana cultivation there.

rifle also were found near the marijuana cultivation in Robinson's house.

A two-count indictment in the Middle District of Alabama charged Robinson with the manufacture and possession of marijuana with intent to distribute and with possession of firearms in connection with a drug trafficking crime. Robinson moved to suppress the marijuana seized from his home pursuant to the search warrant. Following a suppression hearing, the district court denied his motion. Robinson then pled guilty and was sentenced to serve 130 months of imprisonment followed by seven years of supervised release. On appeal, he contends that the FLIR search of his house constituted an illegal search under the Fourth Amendment, and that there were insufficient facts for probable cause to issue the warrant to search his house.

## II. DISCUSSION

■ Decisions on motions to suppress involve mixed questions of fact and law; "we review the district court's factual findings for clear error, and its application of the law to the facts *de novo*." *United States v. Hromada*, 49 F.3d 685, 688 (11th Cir.1995). Additionally, we construe all facts in favor of the prevailing party. *Id.* Robinson first argues that the warrantless FLIR surveillance of his occupied home violated his Fourth Amendment rights.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. In *United States v. Ford*, 34 F.3d 992 (11th Cir.1994), we held that the ground surveillance of an unoccupied mobile home on leased land with a thermal infrared heat detector did not violate the Fourth Amendment. Three other circuits also have concluded that thermal infrared surveillance or FLIR is not an unconstitutional search.

*United States v. Ishmael*, 48 F.3d 850 (5th Cir.1995); *United States v. Myers*, 46 F.3d 668 (7th Cir.1995); *United States v. Pinson*, 24 F.3d 1056 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 664, 130 L.Ed.2d 598 (1994). Robinson argues that this case is distinguished from *Ford* because it involves an occupied home, which specifically implicates the Fourth Amendment. As we explain, our *Ford* analysis also applies to the aerial FLIR surveillance of Robinson's home.

In *Ford*, we recognized that a party alleging an unconstitutional search under the Fourth Amendment must establish *both* a subjective *and* an objective expectation of privacy to succeed. *Ford*, 34 F.3d at 995 (citing *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that " 'the [privacy] expectation be one that society is prepared to recognize as "reasonable." ' " *Id.* (quoting *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring)). Thus, we must determine whether Robinson had a subjective expectation of privacy that society would recognize as objectively reasonable.

Our conclusion in *Ford* that the defendant-appellant held no subjective expectation of privacy turned on his purposefully venting the heat from his marijuana cultivation inside the mobile home with an electric blower through holes drilled in the floor. *Id.* In contrast to *Ford*, Robinson did not vent the heat from his marijuana growing operation or deliberately assist the emission of heat in *any* way. Consequently, we must decide in this case whether inaction can be as revealing regarding the subjective expectation of privacy as action.

The focal issue is whether Robinson had a subjective expectation of privacy in the *heat* generated by his indoor marijuana cultivation.[4] We find none. While Robinson at-

4. By isolating the heat emitted from Robinson's indoor marijuana cultivation, we recognize that we differ from the Fifth Circuit's analysis of the subjective expectation of privacy in *Ishmael*. Although *Ishmael* involved deliberate venting of the heat resulting from marijuana cultivation in a large steel building in an open field through a continuously operating exhaust fan, the Fifth Circuit rejected a "heat waste analogy," *Ishmael*, 48 F.3d at 854, and endorsed a "balance of the evidence" rationale, *id.* at 855, to find that the overall attempts to conceal the marijuana culti-

tempted to conceal his marijuana growing operation by conducting it inside his home, the record does not indicate that he affirmatively took any action to prevent the resulting heat from being emitted into the atmosphere above his house. The record shows no consideration for the emitted heat whatsoever until his indictment and knowledge of the FLIR surveillance, which measured *solely heat* expelled into the atmosphere from Robinson's home. Robinson's *inaction* regarding the heat generated from his marijuana cultivation demonstrates his lack of concern for it. Thus, we conclude that Robinson has not established a subjective expectation of privacy in this heat emitted from his home.

■ Even if Robinson had demonstrated a subjective expectation of privacy in the heat emitted from his home, he also would have to establish the objective component of the *Katz* two-part test. Under the objective prong, the proper inquiry is whether the " 'government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment.' " *Ford*, 34 F.3d at 996 (quoting *Oliver v. United States*, 466 U.S. 170, 182–83, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984)). Therefore, Robinson would have to demonstrate that his privacy expectation in

the heat rising from his house would be accepted by society as objectively reasonable.

In validating the visual inspection of a greenhouse where marijuana was being cultivated within the curtilage of a house, the Supreme Court found that "no *intimate details* connected with the use of the home or curtilage were observed" during the aerial viewing. *Florida v. Riley*, 488 U.S. 445, 452, 109 S.Ct. 693, 697, 102 L.Ed.2d 835 (1989) (emphasis added). FLIR surveillance cannot measure temperature; it "merely compare[s] the amount of heat radiated from various objects." *Pinson*, 24 F.3d at 1057. "[T]he mere fact that the police have employed relatively sophisticated forms of technological surveillance does not render the surveillance unconstitutional.... The crucial inquiry, as in any search and seizure analysis, is whether the technology reveals 'intimate details.' " [5] *Ishmael*, 48 F.3d at 855–56 (footnote omitted) (citation omitted) (quoting *Dow Chemical Co. v. United States*, 476 U.S. 227, 238, 106 S.Ct. 1819, 1827, 90 L.Ed.2d 226 (1986)); *accord Ford*, 34 F.3d at 996; *Pinson*, 24 F.3d at 1059.

In this case, the FLIR surveillance revealed only that Robinson's house emitted

vation satisfied the *Katz* subjective expectation of privacy. We disagree because the issue with thermal imagery is the subjective expectation of privacy in the emitted *heat*, the only measurement of the FLIR, allegedly unconstitutional search at issue in this case.

We also decline to follow the Fifth Circuit's use of *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), to support its reasoning regarding the subjective expectation of privacy as to thermal imagery. *Ishmael*, 48 F.3d at 854. We distinguish *Ciraolo* factually and analytically because it focuses on the object of the criminal conduct, the marijuana cultivation. While the Court found that enclosing a backyard with a six-foot outer fence and a ten-foot inner fence to obscure marijuana growing manifested subjective intent to maintain privacy concerning unlawful marijuana cultivation, albeit unreasonable under the objective test, *Ciraolo* did not involve surveillance that detected only *heat* resulting from *indoor* marijuana cultivation. Consequently, the Court did not address the object of the search at issue in this case, the *heat*.

Moreover, outdoor and indoor marijuana cultivation are not analogous. Cases relating to outdoor marijuana cultivation necessarily involve actual *viewing* of the criminal activity. Indoor marijuana cultivation creates byproducts of the

criminal activity, such as heat, which may be isolated to determine the subjective expectation of privacy in a particular byproduct. *See Ford*, 34 F.3d at 995 (finding that affirmative venting of excess heat generated from indoor marijuana cultivation did not exhibit an expectation of privacy in the *heat* emitted from the mobile home). By ignoring this factual and analytical distinction, the Fifth Circuit has interpreted *Ciraolo* too broadly by overextending the scope of the first prong of the *Katz* test.

> It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision.

*Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821).

5. While we disagree with the Fifth Circuit's analysis of the subjective expectation of privacy, we endorse its reasoning under the objective component of the *Katz* test, under which it concluded that the expectation of privacy in heat detected by thermal imagery was not reasonable. *Ishmael*, 48 F.3d at 855–57.

significantly more heat than others in the neighborhood of similar size. No revelation of intimate, even definitive, detail within the house was detectable; there was merely a gross, nondiscrete bright image indicating the heat emitted from the residence.[6] Such heat detection with thermal imagery is not the "functional equivalent of an X-ray machine in that it allows officers to 'see' within a structure what it otherwise cannot see with the naked eye." *Ishmael,* 48 F.3d at 856.

■ Moreover, there was no intrusion whatsoever into Robinson's home because the emitted heat rose from his house and then was measured by the FLIR surveillance.[7] *See id.* (holding that the *"manner"* of detecting heat is "significant in assessing the reasonableness of the intrusion"). Using infrared surveillance to ascertain heat intensity is analogous to the warrantless use of drug-detecting dogs to locate contraband. *See United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983) (holding that using police-trained dogs to detect drugs in luggage does not violate the Fourth Amendment). Validating FLIR surveillance of a home, the Eight Circuit found that "[j]ust as odor escapes a compartment or building and is detected by the sense-enhancing instrument of a canine sniff, so also does heat escape a home and is detected by the sense-enhancing infrared camera." *Pinson,* 24 F.3d at 1058. Because considerable electric lighting resulting in uncommon heat output is associated with indoor marijuana cultivation,[8] unusual heat registered by FLIR surveillance serves as a method of identification.

■ Thus, we conclude that "[n]one of the interests which form the basis for the need for protection of a residence, namely the intimacy, personal autonomy and privacy associated with a home, are threatened by [FLIR] thermal imagery." *Id.* at 1059; *see Myers,* 46 F.3d at 670 (determining that the thermal surveillance of a home was constitutional, the Seventh Circuit concluded that "[a] thermal imaging scan does not intrude in any way into the privacy and sanctity of a home"). Robinson has failed to establish an objective or reasonable expectation of privacy in the heat emitted from his house resulting from the unlawful marijuana cultivation inside, even if he had met the subjective component of the *Katz* test. Significantly, we are unconvinced that society ever would accept use of the Fourth Amendment to shield unlawful activity within one's home when there are noninvasive methods of detecting such criminal activity through legitimate byproducts, such as the heat at issue in this case. We hold that the FLIR surveillance of Robinson's home was not an unreasonable search violative of the Fourth Amendment.

■ Robinson's second issue on appeal is his contention that there was insufficient evidence to constitute probable cause for issuing a search warrant. Accordingly, he argues that execution of the allegedly invalid search warrant violated his Fourth Amendment rights, and that the marijuana seized

---

**6.** In denying Robinson's suppression motion, the district court found that

> [t]he FLIR detects only the presence of heat emanations. The FLIR does not detect the source of the heat nor provide any information regarding activity within an enclosed space such as defendant's house. Based on the information before it, the Court does not consider the use of the FLIR to be so intrusive as to constitute an unlawful search.

R1–59–2.

**7.** Heat detection through infrared surveillance is conducted through " 'a passive, nonintrusive instrument,' " which " 'does not send any beams or rays into the area on which it is fixed or in any way penetrate structures within that area.' " *Ishmael,* 48 F.3d at 856 (quoting *United States v.*

*Penny–Feeney,* 773 F.Supp. 220, 223 (D.Haw. 1991), *aff'd sub nom. on other grounds, United States v. Feeney,* 984 F.2d 1053 (9th Cir.1993)); *see Myers,* 46 F.3d at 669 (finding that thermal scanning or surveillance "does not penetrate the viewed object, nor does it emit rays or beams of any type"). At the suppression hearing, Agent West testified that "infrared picks up heat from the house, it does not intrude in any way into the residence or whatever, it's what is released from the residence." R3–19.

**8.** *See United States v. Robertson,* 39 F.3d 891, 894 & n. 4 (8th Cir.1994) (acknowledging and listing "[n]umerous cases" that have "noted that high intensity lights are used to grow marijuana indoors and generate excess heat"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1812, 131 L.Ed.2d 736 (1995).

should have been suppressed. Whether a search warrant affidavit provides sufficient facts to establish probable cause of a federal crime is a legal question "subject to complete and independent review by this court." *United States v. Miller,* 24 F.3d 1357, 1360 (11th Cir.1994). We accord great deference to judicial determination of probable cause to issue a search warrant. *United States v. Gonzalez,* 940 F.2d 1413, 1419 (11th Cir. 1991), *cert. denied,* 502 U.S. 1047, 112 S.Ct. 910, 116 L.Ed.2d 810, *and cert. denied,* 502 U.S. 1103, 112 S.Ct. 1194, 117 L.Ed.2d 435 (1992). In issuing a valid search warrant under the Fourth Amendment, a judge " 'is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Miller,* 24 F.3d at 1361 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

 In this case, Agent West of the Narcotics Division of the Alabama Department of Public Safety, who had investigated narcotics offenses for twenty-two years and who specifically had been involved with search warrants concerning indoor marijuana cultivation, presented an affidavit containing the following facts supporting probable cause for a search warrant for Robinson's home: (1) Robinson ordered thirty high-pressure sodium lights from a California company specializing in indoor growing equipment and paid for them with a cashier's check in excess of $7,000.00, (2) Robinson had purchased growing equipment from this company in the past, (3) based on his experience and training,[9] Agent West knew that high-pressure sodium lights are used for indoor marijuana cultivation and that they consume a large amount of electricity and radiate much heat, (4) subpoenaed electric records for Robinson's residence showed higher electrical consumption[10] than for houses of comparable size,[11] (5) aerial surveillance with FLIR equipment revealed considerably more heat emanating from Robinson's home than from neighborhood houses of comparable size, and (6) visual inspection of the property revealed an attractive house with a swimming pool in an affluent neighborhood, yet no record of Robinson's having paid state income taxes could be located. To the extent that Robinson claims that the FLIR aerial surveillance constituted an unlawful, warrantless search unavailable to support probable cause for issuance of the search warrant, we have negated that argument in our foregoing analysis.

Notwithstanding the additional evidence obtained from the aerial FLIR surveillance, we note that the weight of the other evidence would have provided sufficient probable cause for issuance of the search warrant in question. *Cf. United States v. Olson,* 21 F.3d 847, 849 (8th Cir.) ("We find that there was sufficient evidence, independent of the information obtained through the use of the FLIR device, to support a finding of probable cause."), *cert. denied,* — U.S. ——, 115 S.Ct. 230, 130 L.Ed.2d 155 (1994); *United States v. Deaner,* 1 F.3d 192, 197 (3d Cir. 1993) (holding that, even without the FLIR surveillance evidence, the rest of the factual information in the affidavit would have supported probable cause for issuance of the search warrant to determine if marijuana was being cultivated in a private residence); *United States v. Kerr,* 876 F.2d 1440, 1443 (9th Cir.1989) (holding that, even eliminating the infrared inspection, the other factual evidence supported probable cause to issue the search warrant for a shed on residential property to determine if marijuana was being

---

9. " '[O]pinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation' " for issuing a search warrant. *United States v. Motz,* 936 F.2d 1021, 1024 (9th Cir.1991) (alteration in original) (quoting *United States v. Burnes,* 816 F.2d 1354, 1357 (9th Cir.1987)).

10. Evidence of an extremely high power bill is one factor justifying issuance of a warrant to search for indoor marijuana cultivation. *Mills v. Graves,* 930 F.2d 729, 732–33 (9th Cir.1991).

11. Robinson maintains that houses used by Agent West are not comparable in size because they are 2,800 square feet, while his house is approximately 4,200 square feet. This argument is inconsequential to our decision. Our review standard requires us to view the evidence in the light most favorable to the prevailing party, the government. Accordingly, we must take the house size stated by the investigating agent over those alleged by Robinson.

cultivated inside); *see also United States v. Barnett*, 989 F.2d 546, 557 (1st Cir.) (holding that, although infrared heat-detecting device used in aerial surveillance was operated by state police trooper with little experience in the equipment such that the heat readings for the residential property were questionable, the other factual data presented in the affidavit supported probable cause for a search warrant to investigate the manufacture of methamphetamine), *cert. denied*, —— U.S. ——, 114 S.Ct. 148, 126 L.Ed.2d 110, *and cert. denied*, —— U.S. ——, 114 S.Ct. 149, 126 L.Ed.2d 110 (1993). The thermal imagery evidence in addition to the cumulative impact of the other evidence amply demonstrated a fair probability that marijuana cultivation was occurring in Robinson's house. Therefore, Robinson's challenge to the sufficiency of the evidence to support probable cause for issuance of a search warrant for his house is meritless.

### III. CONCLUSION

Robinson challenges the FLIR surveillance used to detect heat emitted from his house and also the sufficiency of the evidence to support probable cause for issuance of the search warrant that culminated in seizing marijuana that he was cultivating inside his home. As we explained herein, the aerial FLIR surveillance did not violate the Fourth Amendment, and the search warrant was valid because it was based upon sufficient evidence to provide probable cause. We AFFIRM.

EDMONDSON, Circuit Judge, concurring:

I concur in the result and in the opinion, except for the discussion (at 3314–3315) of whether Robinson had a subjective expectation of privacy in the heat generated by his indoor marijuana cultivation. On that question, I admit to considerable doubt.

I do not say that today's court is wrong in its conclusion on the point. But, I do say that the answer is less than clear to me, considering especially that the court stresses the inaction of a homeowner as the decisive element. Because I believe the subjective intent issue could be decided either way without affecting the outcome of *this* case, I decline to decide the unnecessary and, for me, delicate question of subjective intent.