679 So.2d 1201 (1996)
STATE of Florida, Appellant,
v.
Mark Kevin SIEGEL and John A. McGlade, Appellees.
No. 95-3225.
District Court of Appeal of Florida, Fifth District.
August 2, 1996.
Rehearings Denied September 24, 1996.
*1202 Robert A. Butterworth, Attorney General, Tallahassee, and Ann M. Childs, Assistant Attorney General, Daytona Beach, for Appellant.
Denise VanNess, of VanNess & VanNess, P.A., Crystal River, for Appellee, Mark Kevin Siegel.
James B. Gibson, Public Defender, and Anne Moorman Reeves, Assistant Public Defender, Daytona Beach, for Appellee, John A. McGlade.
GRIFFIN, Judge.
The state seeks review of a suppression order. We reverse.
Investigator Mark Haas ["Haas"] of the Citrus County Sheriff's Office appeared before County Court Judge Mark Yerman on June 15, 1994, requesting a warrant to search the premises at 10225 South Evans Point, Inverness, Florida. Supporting Haas' complaint was a sworn affidavit. Following is a summary of the allegations of the affidavit.
On March 1, 1994, Haas received an anonymous tip from a female source that defendant Mark Siegel ["Siegel"] had expressed to her his intent to establish an indoor marijuana-growing operation by either renting or buying a trailer on approximately five acres of land in Citrus County. A title search performed by Haas shortly after receiving the tip revealed no purchases in Siegel's name. Haas conducted another title search on May 5, 1994, and again found no record of a purchase. Haas then contacted Florida Power Corporation ["Florida Power"] and learned that Siegel had rented a trailer in Inverness. The electrical bill for Siegel's trailer was $56.10 for March, and $138.38 in April. Comparison data was obtained from Florida Power for two similar trailers on the same street. One trailer's power bills for March and April were, respectively, $81.09 and $70.35; the charges for the second trailer were $36.36 and $28.16. Also on May 5, at 9:30 that evening, Haas and two deputies assigned to the Aviation Division of the Sheriff's Office flew over the rented trailer. The deputies were trained in the proper use of a device, called a forward-looking infrared device ["FLIR"], which allows an operator to see a depiction of heat escaping into the environment from an area or structure. FLIR results from that flight, which were videotaped, revealed that a large amount of heat was escaping from Siegel's trailer. Weather conditions did not warrant such heat usage, suggesting that the large amount of escaping heat may have come from high *1203 intensity lights, commonly used in indoor marijuana-growing operations. Another fly-over was conducted at 1 a.m. on May 12, 1994, with the same deputies operating the FLIR. Identical results were obtained.
Haas then requested the involvement of Special Agent William Mathews ["Mathews"] of Florida Department of Law Enforcement. Mathews, a 30-year veteran of drug investigations, had been assigned specifically to the investigation of domestic marijuana outdoor and indoor grow operations and had received special training from the federal Drug Enforcement Administration ["DEA"]. The training included an awareness that marijuana grows best in temperatures between 70 and 80 degrees and that the intense heat produced from sun-simulating lights must be vented to maintain the desired temperature. Mathews assisted Haas on May 16, 1994, by using a thermal imaging instrument, the Agema Thermovision 210. The thermal imager is an instrument that detects differences in the temperatures of objects being observed. Such imagers are commonly in use by law enforcement, utility companies, and others requiring thermal engineering to monitor heat loss. The May 16 test on Siegel's trailer, conducted at 9:30 p.m. from 50-75 yards away from the residence, was negative.
At 11:30 p.m. on June 14, 1994, after Haas learned of Siegel's $180.70 power bill for May, a second thermal imaging test was performed by Mathews and Haas. This test revealed "inordinate" levels of heat being emitted into the environment from three areas below the floor and one exterior wall surface. All of these areas were within the area of the structure that appeared from the exterior to be totally dark. All coincided with the locations of the abandoned heat observed with the FLIR. There was no high level of heat coming from the areas of the structure that were visibly lighted. Immediately after this examination, Mathews and Haas then examined an adjacent trailer, where they found no comparable levels of emitted heat. A background check performed on Siegel revealed a 1974 arrest in New Hampshire for manufacturing a controlled substance. Siegel had also been arrested in New York in 1986 for unlawful growing of marijuana.
Based on the information contained in Haas' June 15 affidavit, Judge Yerman issued the warrant. Upon executing the warrant, Haas found defendant John McGlade ["McGlade"] inside the trailer, along with 306 marijuana plants, a scale, grow lights, fluorescent lights, a 3-speed fan, a timer-driven electric watering system, a pH meter, reflective paper, hydroponic liquid, a light timer, mylar paper, and a power supply source. McGlade was arrested and Siegel subsequently surrendered.
Siegel and McGlade each filed motions to suppress the seized evidence on the ground that the warrant was not issued on probable cause. The lower court granted these motions, concluding that law enforcement was on "a fishing expedition ... in violation of the Fourth Amendment."[1]
Where, as in this case, a trial court is asked to review a magistrate's decision that probable cause supported the issuance of a warrant, the trial court sits in a reviewing capacity, and the standard to be followed by the trial court is whether the issuing judicial officer had a substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found in a particular place. See Illinois v. Gates, 462 U.S. 213, 236-39, 103 S.Ct. 2317, 2331-32, 76 L.Ed.2d 527 (1983); Bonilla v. State, 579 So.2d 802, 805 (Fla. 5th DCA 1991) (citing State v. Price, 564 So.2d 1239, 1241 (Fla. 5th DCA 1990)); State v. Lasswell, 385 So.2d 668, 670 n. 1 (Fla. 2d DCA), review denied, 392 So.2d 1376 (Fla.1980). The magistrate's determination is entitled to deference unless it fails to meet the standard announced by the Supreme Court in Gates.
*1204 The tip in this case was short on detail but it was substantially corroborated. Haas learned that Siegel had obtained power sources for a trailer in Citrus County.[2] By visually examining the trailer, by researching the trailer's power consumption records, and through the use of thermal imaging and the FLIR, the constitutionality of which has not been contested here by either defendant,[3] Haas also learned that the activities taking place inside that trailer were consistent with an indoor marijuana-growing operation.
In United States v. Robinson, 62 F.3d 1325 (11th Cir.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996), a DEA agent informed an Alabama state narcotics investigator that thirty high-pressure, sodium lights had been shipped to Robinson's home. The investigator's research revealed that Robinson had twice ordered similar lights and hydroponic equipment. Utility records for Robinson's home showed that the home's average monthly kilowatt consumption for June, July and August, 1991, was only 5,570 kilowatt hours for an average charge of $410.89. In December, 1991, however, the usage increased to nearly 10,000 kilowatt hours and a charge of $562. Similar homes were found to have monthly power bills between $130 and $150. Robinson's home was attractive and had a swimming pool and a nearby lot on which stood a new, prefabricated metal building. The lights had been purchased with a $7,000 cashier's check, but Alabama had no record of Robinson's having filed tax returns. The investigator directed a fly-over of the house using a FLIR, the results of which showed Robinson's home to be considerably warmer than surrounding homes. A search warrant was then obtained and a marijuana cultivation operation was discovered in Robinson's home. The Eleventh Circuit upheld the district court's denial of Robinson's motion to suppress.
In United States v. Ishmael, 48 F.3d 850 (5th Cir.1995), a DEA agent was informed by a confidential source that the source had delivered numerous truck loads of concrete re-mix to the Ishmaels' property and that the Ishmaels took inordinate measures to conceal the need for the materials. The agent entered the rural property and found two mobile homes and a trailer. He saw no sign of illegal activity. In 1993, a year later, the agent resumed his investigation of the Ishmaels. He learned that Rohn Ishmael's criminal record contained at least four separate marijuana-related incidents dating back to 1974, some of which involved the cultivation *1205 of marijuana. An aerial survey revealed that on the Ishmaels' property were a mobile home and, standing next to a pond, a large steel building. The agent reentered the property and discovered that a substructure had been built beneath the steel building. An exhaust fan attached to the substructure continuously ran. The substructure was wired for electricity, and exposed rubber tubes and a pump connected it to the pond. A nearby pallet contained 100 5-gallon plastic buckets. This time using a thermal imager, the agent again flew over the property and found that, although cool water entered the substructure, the water exiting it emitted heat. The ground near the structure was warmer than that farther away from it. The Ishmaels' telephone records indicated that calls had been placed to various horticulture shops, including businesses thought to be suppliers for marijuana cultivators, and the electrical records for the property revealed that the substructure's electrical usage far outweighed that of the trailer. Finally, a hand-held thermal imager confirmed the results of the previous aerial survey. After a warrant was issued and executed, 770 marijuana plants were found in the substructure. Evaluating this evidence in a "common-sense manner," the Fifth Circuit concluded that the totality of the circumstances "clearly indicated" a fair probability that the Ishmaels were cultivating marijuana in the substructure. Id. at 857.
In United States v. Zimmer, 14 F.3d 286 (6th Cir.1994), an informant allegedly told the police that Zimmer was growing marijuana in his home. A thermal imager detected excessive heat coming from the structure, and electrical records indicated that the home used substantially more electricity than others in the neighborhood. In an unrelated incident, a police officer visiting Zimmer's home reported that the house smelled of marijuana. A warrant was issued and 802 marijuana plants were confiscated. Zimmer then moved to suppress the evidence, claiming that the officer fabricated the tip. On appeal, the circuit court affirmed the trial court's denial of the motion to suppress.
Finally, in United States v. Broussard, 987 F.2d 215 (5th Cir.1993), overruled on other grounds, J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), a confidential informant ["CI"] informed federal officers that Broussard was cultivating marijuana in his trailer. The CI explained that marijuana and cultivation equipment had been seen at the trailer within the preceding two months and that Broussard had been hydroponically cultivating marijuana since 1989. An investigation revealed that Broussard's electrical usage doubled in June, 1991, supposedly the "height" of the marijuana growing season. Broussard did not have a job and seldom left his trailer, all of the windows of which were blackened out. Also, occupants of the trailer had purchased hydroponic gardening equipment in 1989 and a thermal imaging device indicated that Broussard's trailer emitted more heat than did other mobile homes in the area. Following the issuance of a search warrant, a small cultivation operation was discovered. Broussard argued that the evidence should be suppressed for lack of probable cause, and the trial court denied his motion. In affirming, the Fifth Circuit acknowledged that the affidavit supporting the warrant offered little concerning the CI's veracity, reliability or basis of knowledge. The court held, however:
Significantly, the affidavit does not rely completely on the information from the CI. These other corroborating factselectricity, blackened windows, thermal imaging, considered with the information from the CI provide sufficient evidence of probable cause.... We conclude that Broussard's motion to suppress was properly denied.
Id. at 222.
Although no single piece of evidence may be conclusive, a magistrate's determination to issue a warrant should be upheld where "the pieces fit neatly together" to support the conclusion that contraband or evidence of a crime would be found at the location to be searched. Massachusetts v. Upton, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984). As in the above-described cases, we conclude the various pieces of information marshalled in this case and outlined in the affidavit fit neatly together and support the magistrate's conclusion *1206 that there was a fair probability that marijuana would be found in the trailer.
REVERSED AND REMANDED.
W. SHARP and THOMPSON, JJ., concur.
NOTES
[1] The court explained:

As I've previously mentioned, it's a fishing expedition by the police department. And that's in violation of the Fourth Amendment. He didn't know. He did not know that the law was being violated. He cannot even say beyond a reasonablea probable cause the law was being violated. It appears to be a fishing expedition and that's specifically prohibited by the Fourth Amendment. I grant the motion.
[2] The affidavit avers that Siegel was the renter; the record reveals only that the utilities were in his name.
[3] No Florida court has expressly ruled on the constitutionality of using such thermal or infrared imaging devices, although the issue has arisen in many other jurisdictions. The inquiry generally has taken the form, in keeping with Justice Harlan's opinion in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that a person has a legitimate expectation of privacy, and thus a warrant is required, if an individual has evidenced a subjective actual expectation of privacy and if that expectation is one that society is prepared to acknowledge as reasonable. Id., 389 U.S. at 360-61, 88 S.Ct. at 516-17 (Harlan, J., concurring); see also State v. Smith, 641 So.2d 849, 851 (Fla.1994). The weight of authority is that the use of thermal or infrared imaging devices does not require a warrant. United States v. Robinson, 62 F.3d 1325, 1328-31 (11th Cir.1995) (house), cert. denied, ___ U.S. ___, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996); United States v. Ishmael, 48 F.3d 850, 853-57 (5th Cir.1995) (underground concrete structure); United States v. Myers, 46 F.3d 668, 669-70 (7th Cir.) (house), cert. denied, ___ U.S. ___, 116 S.Ct. 213, 133 L.Ed.2d 144 (1995); United States v. Ford, 34 F.3d 992, 995-97 (11th Cir.1994) (mobile home); United States v. Pinson, 24 F.3d 1056, 1058-59 (8th Cir.) (house), cert. denied, ___ U.S. ___, 115 S.Ct. 664, 130 L.Ed.2d 598 (1994); United States v. Domitrovich, 852 F.Supp. 1460, 1471 (E.D.Wash.1994) (lean-to outside curtilage), affirmed, 57 F.3d 1078 (9th Cir.1995); United States v. Penny-Feeney, 773 F.Supp. 220, 225-228 (D.Hawai'i 1991) (house), affirmed on other grounds, 984 F.2d 1053 (9th Cir.1993); State v. Cramer, 174 Ariz. 522, 851 P.2d 147, 150 (App.1992) (house); LaFollette v. Commonwealth, 915 S.W.2d 747, 748-50 (Ky. 1996) (house); State v. Niel, 671 So.2d 1111 (La.Ct.App.1996); State v. McKee, 181 Wis.2d 354, 510 N.W.2d 807, 808-10 (App.1993) (house), review denied, 515 N.W.2d 715 (Wis. 1994). A minority of courts have held that such activities may amount to searches under the Fourth Amendment. United States v. Field, 855 F.Supp. 1518, 1518-19 (W.D.Wis.1994) (home); People v. Deutsch, 44 Cal.App.4th 1224, 52 Cal. Rptr.2d 366, 367-70 (1996); State v. Young, 123 Wash.2d 173, 867 P.2d 593, 601-04 (1994) (holding infrared surveillance to be a search under U.S. and Washington constitutions).