[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12561

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOHNNIE PAGE LOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:21-cr-00275-RAH-CWB-1

_____

Before JILL PRYOR, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Mr. Johnnie Lott appeals his convictions and sentences for conspiracy to possess with intent to distribute controlled substances and conspiracy to commit money laundering. First, Mr. Lott argues the district court erred in denying his motion to suppress evidence obtained at his wife's home pursuant to a search warrant because the warrant affidavit was insufficient to establish probable cause. Second, Mr. Lott argues that the district court plainly erred in allowing lay opinion testimony by a federal officer regarding the content of recorded jail calls to cross into impermissible conclusions regarding the defendant's conduct. Third, Mr. Lott argues that the evidence was insufficient to support the jury verdict as to the quantity of methamphetamine involved in his drug trafficking conspiracy. Finally, Mr. Lott argues that the district court erred at sentencing by increasing his base offense level based on the methamphetamine quantity involved in his offense. After careful review, we affirm.

## I.    Factual Background

In May 2020, a Corrections Officer at Kilby Correctional Facility ("Kilby") stopped an inmate named Maurice Sanders after observing an unusual bulge in his pants. After a search, law enforcement recovered two large clear plastic bags containing marijuana and methamphetamine from Sanders. The methamphetamine was analyzed by a Drug Enforcement

Administration ("DEA") laboratory and determined to be 72.3 grams of methamphetamine. Both at the time of his arrest and at his eventual trial, Sanders denied having anything to do with Mr. Lott.

However, due to the extensive time Mr. Lott, also an inmate at Kilby, spent using the prison telephones, prison officials became suspicious Mr. Lott was involved with Sander's drug trade and retrieved recordings of Mr. Lott's phone conversations for referral to DEA Task Force Officer ("TFO") James Ranson. Ranson reviewed recorded prison telephone calls between Mr. Lott and Mrs. Carmen Lott, his wife, as well as calls between Mr. Lott and other individuals.

Ranson discovered that several of the calls involved conversations about the apparent details of narcotics distribution and money laundering between Mr. Lott and Mrs. Carmen Lott. For example, Mrs. Lott told Mr. Lott that she received a letter from the bank requesting an explanation for large deposits of up to $17,766 she made to her account, and she and Mr. Lott discussed hypothetical businesses to make the transactions look like legitimate income. In another conversation, Mrs. Lott referred to a green package kept in a "clear little vacuum pack" that weighed "30.5", which Ranson determined was a reference to packaging and weighing marijuana. Mr. Lott remarked to Mrs. Lott that "the chemical" came from China. Mr. Lott also was recorded discussing the apparent finding of drugs on Sanders, with Mr. Lott lamenting that he had told Sanders how to hide the drugs properly.

A grand jury indicted Mr. Lott for conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (h). Concurrently, Ranson obtained a search warrant for Mrs. Lott's home based on the phone calls between her and Mr. Lott. Upon executing the warrant, agents seized $129,245 in cash from a safe within the home, a money counter, a digital scale, credit cards, gift cards, a 2020 Chevrolet Camaro and accessories, and documents. Agents also seized funds from two bank accounts in Carmen Lott's name in the amounts of $27,462.46 in a savings account and $1,070.92 in a checking account. No narcotics were found in the house.

Mr. Lott filed a motion to suppress evidence found in, and stemming from, the June 3, 2020 search of "the residence of Johnnie and Carmen Lott" and requested an evidentiary hearing. Mr. Lott argued in relevant part that: (1) the affidavit supporting the June 3, 2020 search warrant was deficient and did not support probable cause that Mr. Lott participated in any drug crime; (2) the affidavit did not support probable cause that contraband or evidence of a crime would be found in Mrs. Lott's residence; (3) Ranson "inexplicably left out the only actual evidence of drugs being seized from an alleged co-conspirator, Maurice Sanders" from the affidavit and was otherwise misleading in his testimony, and (4) because the affidavit contained only Ranson's "belief" that the recorded jail phone conversations were evidence of a crime, requiring further corroborating evidence to establish probable cause to search the home.

A magistrate judge reviewed Mr. Lott's motion and issued a report and recommendation ("R&R") concluding that Mr. Lott did not have standing to challenge the search warrant and that the affidavit was supported by probable cause.  As an initial matter, the magistrate judge determined that, as an incarcerated inmate since 2003, Mr. Lott lacked standing because he had not shown that he had "an unrestricted right of occupancy or custody and control of the residence" and therefore did not have a legitimate expectation of privacy in Mrs. Lott's residence.  The magistrate judge also found that Mr. Lott's challenge to the search warrant failed because, in relevant part: (1) the affidavit established a sufficient connection between Mrs. Lott and the residence (2) the affidavit established a reasonable basis that Mr. Lott and Mrs. Lott were engaging in criminal activity and that evidence of drug distribution and money laundering would be found at Mrs. Lott's residence; and (3) Mr. Lott did not meet his burden of showing that an evidentiary hearing regarding omitted information from the affidavit was required.

The district court, over Mr. Lott's objections, adopted the R&R and denied Mr. Lott's motion to suppress for the same reasons as set forth in the R&R.  Subsequently, a grand jury indicted Mr. Lott for conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) and 846 (Count One); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (h) (Count Two).  Mr. Lott proceeded to trial on both counts.

At trial, the government presented voluminous evidence detailing Mr. Lott's coordination of drug sales within Kilby, including through Mr. Sanders, and his subsequent efforts to assist Mrs. Lott in money laundering. One Kilby officer testified that he accessed the phone system to listen to Mr. Lott's conversations and overheard what he believed to be discussions of illegal activity. An intelligence analyst and mobile forensic examiner testified that law enforcement agents executed a search warrant on Mrs. Lott's residence and seized a large amount of U.S. currency, a money counter, digital scales, a vacuum sealer, credit cards, gift cards, a Chevrolet Camaro, and documents.

Ranson was also called to provide the jury with the results of his investigation. Ranson testified that by listening to the phone calls between Mr. Lott and Mrs. Lott, he was able to determine that Mr. Lott was coordinating payments through a CashApp account that belonged to Mrs. Lott. After a portion of the recording was played in court, Ranson stated that he heard discussion of a package being vacuum-sealed and that he had, in his experience, come across marijuana in a vacuum-sealed bag and believed that vacuum sealing "could alter the ability of someone to smell the marijuana." He testified that a photo recovered from a phone belonging to Mrs. Lott. attached to an outgoing text message, depicted marijuana.

Additional segments of Mr. Lott's phone calls were played to the jury, and Ranson further testified regarding the meaning of various words the jury had heard on phone calls throughout the trial based on his familiarity with the terms through his

investigation.  He told the jury that "grass," "green," and "ganja" are terms for marijuana; a "zip" is an ounce; a "cap" is a unit of measurement based on the size of a cap of ChapStick; a "band" is $1000; "dope" is a term for narcotics; "ice" is a term for methamphetamine; and that "chop it up" means to break down the methamphetamine into a more granular substance.  He also testified to knowing the nicknames of certain inmates, some of whom were participants in Mr. and Mrs. Lott's calls, including that an inmate named "Trap" was Travis Lawson, "Pie Face" was Karl Martin, "C Note" was Anthony Orsag, and "Stud" was a nickname for Lott.

Finally, the government also presented the jury with evidence regarding the amount of drugs trafficked by Sanders and several of Mr. Lott's jail phone conversations regarding Sanders.  A DEA forensic chemist testified that she had analyzed a package containing a crystallized substance recovered from Sanders's pants, and that the package contained 72.3 grams of methamphetamine.

The government then played a recorded jail phone call between Mr. Lott and two unidentified males that took place on May 24, 2020, the same date that officers found the drugs on Sanders.   In that call, one of the unidentified men informed Mr. Lott that "I made it through" but "[t]hey had him . . . this shit poking out, like a head in his pants," and that an officer had spotted something and called over "Sarge."   Mr. Lott replied "you should [have] got the shit" to which one of the men said "[t]hey already had him."   Mr. Lott then stated, "On my Mama boy I told [him]

before he left, I say it's poking out bruh.  You got to push it all the way back . . . ."  Mr. Lott also told the unidentified man how he had asked "Sarge" how the corrections official had "got [Sanders]" and that "Sarge" had replied that the "[drugs] was poking out like a dick."  Mr. Lott noted that "[h]e just came back over here and [tried to] snitch me out" but "nobody never [k]no[w] nothing when it's coming from me," and "I'm fixing to [go and] handle this with him man because like I say we ain't tripping."  After the phone call was played, another Kilby officer testified that he was the "Sarge" that Mr. Lott had referred to in the call and that Mr. Lott had questioned him about the drugs recovered from Sanders.

Mr. Lott then testified in his own defense.  While Mr. Lott acknowledged that he participated in a jail phone conversation in which he remarked that Sanders could have successfully hidden the contraband in his pants from prison officials, Lott described the jail phone conversation as "small talk."  He also testified that he had "[n]othing at all" to do with the methamphetamine that was recovered from Sanders and that he had never met Sanders prior to Sanders's being discovered with the contraband in May 2020.

After the defense rested, Mr. Lott renewed his motion for judgment of acquittal, and the court denied the motion.  The jury subsequently found Mr. Lott guilty of Counts One and Two, and, as to Count One, that Mr. Lott was guilty of conspiracy to possess methamphetamine weighing 50 grams or more.  The district court sentenced Mr. Lott to 300 months' imprisonment on Count One and 240 months' concurrent imprisonment on Count Two.

During Mr. Lott's sentencing hearing, the district court calculated an elevated offense level resulting from a finding that Lott was responsible for more than 50 grams of methamphetamines.

Mr. Lott timely appealed.

## II.    Discussion

On appeal, Mr. Lott argues the district court erred in 4 ways: 1) by denying his motion to suppress the evidence obtained at his wife's home, 2) in allowing lay-opinion testimony by a federal officer regarding the content of recorded jail calls, 3) by denying his motion for acquittal because the evidence was insufficient to support the jury verdict as to the quantity of methamphetamine involved in his drug trafficking conspiracy, and 4) in calculating an increased base offense level based on the methamphetamine quantity.   We address each argument in turn and affirm on all counts.

1. *The district court did not err in denying Mr. Lott's motion to suppress evidence obtained from the search of Mrs. Lott's residence*

Lott argues that the district court erred by denying his motion to suppress without a hearing because he had standing to challenge the warrant, and the search warrant affidavit failed to set forth the necessary probable cause to search Mrs. Lott's residence. While Mr. Lott concedes that he never lived at Mrs. Lott's residence, he contends that he nevertheless possessed a reasonable expectation of privacy as to personal property stored at his wife's home.  He further argues that the affidavit in support of the search

warrant contained no information connecting him or Mrs. Lott to any drugs found in prison facilities, that the affidavit omitted information regarding Sanders that directly contradicted any notion of Mr. Lott's involvement with Sanders, and that the "good-faith" exemption should not apply. We disagree.[1]

When considering a denial of a motion to suppress without an evidentiary hearing, we review factual findings for clear error, "considering all the evidence in the light most favorable to the prevailing party." *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (*en banc*). However, we review whether an affidavit establishes probable cause *de novo*, with "due weight [given] to inferences drawn from those facts [recited in the affidavit] by resident judges and local law enforcement officers." *United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (quotations omitted). A hearing is required if a defendant makes a preliminary showing that "(1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was

---

[1] Because we find the warrant sufficient to establish probable cause, we do not address Mr. Lott's standing or "good-faith" arguments regarding whether he possessed a privacy interest in Mrs. Lott's home nor whether the good faith exception applies. We also note that standing for Fourth Amendment purposes is not "jurisdictional," and we are therefore free to resolve the merits on non-standing grounds. *Presley v. United States*, 895 F.3d 1284, 1290 (11th Cir. 2018) ("[U]nlike Article III standing, standing under the Fourth Amendment is not jurisdictional; instead, we analyze it as a merits issue.")

essential to the finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006).

"Probable cause exists if, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Trader*, 981 F.3d 961, 969 (11th Cir. 2020) (quotations omitted). "To establish probable cause to search a home, a warrant affidavit must establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.* (quotations omitted). "Opinions and conclusions of an experienced agent regarding a set of facts" are proper factors to be considered in determining if probable cause for the issuing of a warrant exists. *United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) (quotations omitted).

A reviewing court may consider only the information presented to the magistrate judge, *United States v. Lockett*, 674 F.2d 843, 845 (11th Cir. 1982). However, while it is true that a search warrant affidavit may be invalidated if it "contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit, . . . [o]missions that are not reckless, but are instead negligent, or insignificant and immaterial, will not invalidate a warrant." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326–27 (11th Cir. 1997) (quotations and internal citations omitted). "Indeed, even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Id.*

Here, the district court did not err in denying Mr. Lott's motion to suppress without an evidentiary hearing because Ranson's affidavit sufficiently established a nexus between Mr. Lott, his wife, illegal drugs present in prison facilities, Mrs. Lott's residence, and potential evidence related to Mr. Lott's drug trafficking conspiracy. Ranson's affidavit contained jail phone transcripts that detailed large financial gains and transactions being discussed by Mr. Lott and Mrs. Lott, including strong implications that the Lotts made thousands of dollars while Mr. Lott was imprisoned. The transcripts also contained indicia that some of Mr. Lott's money was contained in the safe at Mrs. Lott's residence.

Additionally, Mrs. Lott and Mr. Lott repeatedly used language which Ranson concluded was code for illicit drugs. Mrs. Lott and Mr. Lott discussed drugs often in relation to prospective profits—and in multiple instances, their discussion of drugs was in direct relation to prison facilities and inmates.[2] Taken together, the facts in the affidavit and Ranson's expertise as an officer investigating drug crimes adequately supported the magistrate judge's determination that probable cause existed for a search of Mrs. Lott's residence. *See Jiminez*, 224 F.3d at 1248; *Robinson*, 62 F.3d at 1331 n.9.

Mr. Lott's remaining counter-argument, that information omitted in the affidavit regarding Sanders's role in the conspiracy

---

[2] Some of the phone calls additionally included the participation of another Kilby inmate, Travis Lawrence, who Ranson testified is the party know as "Trap" on the phone calls.

renders the affidavit unreliable or that in the alternative the information was "essential", thus requiring an evidentiary hearing, is unconvincing. Mr. Lott contends that Ranson omitted from his affidavit that Sanders had been found with methamphetamine inside Kilby concurrent to Mr. Lott's drug trafficking conspiracy and that, at the time of his arrest, had denied any involvement with Mr. Lott. However, this omitted information did not affect the "accuracy of the affidavit" nor was it "clearly critical" to a finding of probable cause in light of the other facts in the affidavit supporting probable cause. *Madiwale*, 117 F.3d at 1326–27 (quotations omitted). Indeed, Mr. Lott's phone calls discussing code language for illicit drugs and suspicious movements of large amounts of cash was more than sufficient to establish probable cause on its own.

In any event, information related to Sanders would not have "prevented a finding of probable cause" if Ranson had included the information in the affidavit. *Id.* at 1327 (quotations omitted). Sanders and Mr. Lott were initially indicted as co-conspirators and were inmates at the same correctional facility. The demonstrated presence of narcotics within a facility where a drug trafficking conspiracy was suspected would have increased the likelihood of a finding of probable cause, rather than decreasing it. While Sanders professed to not know Mr. Lott, the unsworn comments of a prisoner who had just been found in possession of narcotics do not bear significant indicia of reliability. Thus, Ranson's omission of the methamphetamine found on Sanders, and Sanders's claim that Mr. Lott was not involved, amount to "insignificant and

immaterial" omissions that do not invalidate the search warrant nor require an evidentiary hearing. *See id.* at 1327.

Because we find a determination of "probable cause" was adequately supported, we affirm the district court's denial of Mr. Lott's motion to suppress.

### 2. *The district court did not err in allowing Ranson's testimony*

Lott argues that the district court plainly erred in allowing Ranson to testify as to the meaning of phone calls and text messages, arguing that Ranson's interpretation constituted impermissible speculation beyond the acceptable bounds of lay testimony. He maintains that, although Ranson was not offered as an expert witness, his testimony regarding code words for drugs, suspected financial transactions, and identification of people talking on phone calls exceeded the permissible scope of his testimony and invaded the province of the jury. He argues that this error affected his substantial rights because Ranson's testimony drew inferences that should have been left for the jury. We again disagree.

Because Mr. Lott did not object to Ranson's testimony at trial, we review for plain error. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007). To establish plain error, a defendant must show that there was: (1) an error; (2) that is plain; and (3) that affects substantial rights. *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006). Even if all three conditions are met, we only reverse for plain error if the error seriously affects the fairness,

integrity, or public reputation of judicial proceedings. *Id.* An error is not plain unless it is obvious and clear under current law. *Id.*

The Federal Rules of Evidence distinguish between lay and expert opinion testimony. Lay opinion testimony must be "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Lay opinion testimony cannot provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events." *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F.4th 1346, 1358 (11th Cir. 2022) (quotations omitted). Expert opinion testimony, by contrast, is opinion testimony based on "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. Expert witnesses must be properly "qualified," and their opinions are admissible only if certain reliability requirements are met. *See id.*

We have noted that the distinction between lay and expert testimony sometimes blurs when testimony is based on professional experience. *United States v. Gbenedio*, 95 F.4th 1319, 1332 (11th Cir. 2024). However, a witness may offer "lay opinion testimony based on his professional experiences as long as the testimony is rationally based on those experiences, rather than on scientific or technical knowledge." *United States v. Williams*, 865 F.3d 1328, 1341 (11th Cir. 2017) (quotations omitted). Thus, we have held that police officers may testify under Rule 701 about their

understanding of the meaning of code words that defendants used in intercepted conversations. *See United States v. Novaton*, 271 F.3d 968, 1008–09 (11th Cir. 2001) (holding that an officer's opinion testimony about the meaning of code words used by defendants was based on perceptions and experience as police officers and constituted lay opinion testimony); *United States v. Awan*, 966 F.2d 1415, 1430 (11th Cir. 1992) (holding that an undercover agent was permitted to testify concerning the "meaning and import" of statements that were part of tape-recorded conversations with the defendants).

The district court thus did not plainly err in admitting Ranson's opinion as lay testimony.  Ranson's testimony was not based on scientific or technical knowledge that would fall within Rule 702.  Instead, Ranson testified as to the meaning of code words, the use of certain drug paraphernalia, and the nicknames of several inmates at Kilby, based on his years of experience and training as a DEA officer, his interactions with and observations of inmates in Alabama prison facilities, and his personal investigation of this case.  Such testimony was "rationally based on those experiences, rather than on scientific or technical knowledge" and falls within the bounds of lay opinion testimony. *Williams*, 865 F.3d at 1341 (quotations omitted); *see Novaton*, 271 F.3d at 1008–09; *Awan*, 966 F.2d at 1430; *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003); *see also* Fed. R. Evid. 701, 702.  Mr. Lott has not demonstrated that admitting the lay opinion testimony of a federal agent as to the meaning and

interpretation of his conversations with Ms. Lott is erroneous, much less plainly erroneous.  *See Castro*, 455 F.3d at 1253.

> 3. *The government presented sufficient evidence to support the special verdict concerning the methamphetamine weight for which Lott was responsible*

Mr. Lott argues that the government presented insufficient evidence to support the jury verdict regarding the quantity of methamphetamine for which he was responsible.  In his view, the government failed to connect Mr. Lott directly or circumstantially to that methamphetamine possessed by Sanders.  He argues that the government's case regarding the weight of the methamphetamine relied on inferences so vague and insufficient as to violate his due process rights.  We hold that the evidence was sufficient to support his conviction.

We review sufficiency-of-the-evidence arguments not raised in the district court for plain error.  *United States v. Leon*, 841 F.3d 1187, 1190, 1196 (11th Cir. 2016).  Mr. Lott concedes that we review for plain error because he did not specifically raise an objection regarding the weight of methamphetamine involved in the conspiracy at trial.  As discussed, we will only reverse if we find that there was: (1) an error; (2) that is plain; and (3) that affects substantial rights.  *Castro*, 455 F.3d at 1253.  And even if all three conditions are met, we only reverse for plain error if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

When considering whether sufficient evidence exists to support a conviction, we view the evidence in the light most favorable to the government and make all reasonable inferences and credibility choices in the government's favor. *United States v. Broughton*, 689 F.3d 1260, 1276 (11th Cir. 2012). "If a reasonable jury could conclude that the evidence establishes guilt beyond a reasonable doubt, the verdict will be affirmed." *United States v. Achey*, 943 F.3d 909, 913 (11th Cir. 2019) (quotations omitted). The evidence need not exclude every reasonable hypothesis of innocence. *United States v. Young*, 906 F.2d 615, 618 (11th Cir. 1990).

Here, sufficient evidence existed to support the jury verdict as to the weight of methamphetamine involved in the offense. *See Broughton*, 689 F.3d at 1276. When viewing the evidence in the light most favorable to the government and making all reasonable inferences and credibility choices in the government's favor, the jury could have reasonably concluded that the methamphetamine recovered from Sanders—72.3 grams—was part of Mr. Lott's drug conspiracy. *See id.*; *Ramirez-Chilel*, 289 F.3d at 749. In particular, the jury could have based such a verdict on the phone call between Mr. Lott and another man about Sanders that took place the same day Sanders was caught.

During that call, which was played to the jury, the man reported to Mr. Lott that he had "made it through" but someone else had been stopped because the "shit [were] poking out, like a head in his pants." Mr. Lott replied "you should of got the shit" and the man said "[t]hey already had him." Mr. Lott then stated

that he had "told [him] before he left" that "it" was poking out and he needed to push it back under his "ass cheek." Mr. Lott also noted that "[h]e just came back over here and [tried to] snitch me out" but "nobody never know nothing when it's coming from me."

Based on the timing and content of the call, the jury could reasonably have inferred that Mr. Lott had told Sanders how to hide the drugs and that Mr. Lott was directing the movement of these drugs through the prison. *See United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011). Taken together and construed in a light most favorable to the government, the evidence presented at trial was adequate to support beyond a reasonable doubt that the 72.3 grams of methamphetamine recovered from Sanders was part of Mr. Lott's conspiracy. *Id.* Accordingly, we affirm.

4. *The district court did not err in applying a heightened base offense level*

Mr. Lott argues that the district court procedurally erred in calculating his base offense level based on the finding that he was responsible for between 50 and 150 grams of methamphetamine. Referencing his prior sufficiency of the evidence arguments, Mr. Lott contends that the government did not prove by a preponderance of the evidence that the methamphetamine seized from Sanders should have been considered in his sentencing calculations. He argues that the inclusion of the 50-gram drug weight sentencing enhancement was clearly erroneous. Because we find that the evidence was sufficient to support Mr. Lott's conviction for being responsible for over 50-grams of

methamphetamines beyond a reasonable doubt, we find no clear error in the district court's application of the heightened base offense level based on the same finding and evidence.

### III.    Conclusion

Mr. Lott has not shown the district court erred in admitting any evidence, nor that the evidence was insufficient to support his conviction or sentence.  Accordingly, we affirm.

**AFFIRMED.**