**UNITED STATES of America, Appellee,**

v.

**Joseph PINSON, Appellant.**

**No. 93–2851.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1994.

Decided May 23, 1994.

Rehearing Denied June 21, 1994.

Murray Stone, St. Louis, MO, argued, for appellant.

Kenneth R. Tihen, St. Louis, MO, argued (Edward L. Dowd, Jr., Kenneth R. Tihen and Frans Von Kaenel, on the brief), for appellee.

Before BOWMAN, Circuit Judge, and BRIGHT and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

Appellant Joseph Pinson appeals from the jury verdict finding him guilty of one count of manufacturing over 100 marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On appeal, Pinson claims the government's aerial surveillance of his residence with an electronic device known as a Forward Looking Infrared Device (FLIR) constituted an illegal search in violation of his Fourth Amendment rights. Pinson also challenges the district court's [1] refusal to grant a downward departure under the "lesser harms" exception of U.S.S.G. § 5K2.11. After careful consideration of the briefs, record and arguments of the parties, we affirm both the conviction and the sentence.

I.

On July 30, 1991, pursuant to a federal search warrant, agents of the Drug Enforcement Agency (DEA) and St. Louis city police officers searched Pinson's residence, located at 2034 Knox in St. Louis, Missouri. The affidavit in support of the search warrant showed that the investigation into Pinson's activities began on June 10, 1991, when Officers Whitson and Geiger of the Missouri State Highway Patrol learned that, in February 1989, Pinson had received three United Parcel Service packages from companies that were known suppliers of indoor hydroponic growing equipment. These companies were also known to advertise in *High Times* magazine, a publication that promotes the cultivation and use of marijuana. The affidavit also showed that the DEA Task Force had subpoenaed electrical utility records for Pinson's residence, as well as for other residences in the vicinity. Those records showed that 2034 Knox had an unusually high electrical usage, which the attesting detective stated was indicative of the extra electrical lighting needed for indoor cannabis cultivation.

The affidavit also provided that based on this information, the DEA decided to use an FLIR mounted on the underside of a St. Louis County Police Department helicopter. The helicopter performed aerial surveillance of Pinson's residence on July 25, 1991, at approximately 1:20 a.m. The affidavit established that the FLIR observation revealed that the covered window on the third floor displayed an excessive amount of heat as did the roof and a skylight of the residence.

The July 30, 1991 execution of the search warrant revealed an indoor marijuana growing operation on the third floor or attic of the residence. Marijuana plants, processed marijuana, cash, miscellaneous growing equipment, and magazines and books concerning marijuana cultivation were seized from the home pursuant to the search warrant. Pinson testified that the indoor marijuana growing operation was set up and maintained to treat his alleged asthma problems.

At the suppression hearing, Officer Patterson testified that the FLIR device provides only comparisons of surface temperatures. The device cannot actually measure temperature, but can merely compare the amount of heat radiated from various objects. Officer Patterson further testified that high intensity discharge lights, which use between four hundred and one thousand watt bulbs, are necessary for indoor marijuana growing operations. The use of these bulbs generates heat of approximately 150 degrees or more. Due to the fact that the optimum growing temperature for marijuana is between 68 and

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

72 degrees, the excess heat generated by the high-wattage bulbs must be vented in order to properly maintain the indoor marijuana growing operation.

■ On appeal, Pinson argues that the use of the FLIR to detect the heat emanating from his home without first obtaining a warrant constituted an unreasonable search and seizure in violation of the Fourth Amendment.[2] A party claiming to have suffered an unlawful invasion in violation of the Fourth Amendment must establish as a threshold matter that he had a legitimate expectation of privacy in the object searched or seized. An expectation of privacy is only reasonable where (1) the individual manifests a subjective expectation of privacy in the object of the challenged search; and (2) society is willing to recognize that subjective expectation as reasonable. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring).

Here, the government argues that Pinson did not have a reasonable expectation of privacy in the heat that was radiating from his house into the surrounding air space. It contends the heat-sensing device did not invade Pinson's home nor its curtilage, nor did it emit rays into his home. Instead, according to the government, the law enforcement officers merely used the device to enhance their ability to detect variations in temperature emanating from the surface of the house.

In *United States v. Penny–Feeney,* 773 F.Supp. 220 (D.Haw.1991), *aff'd on other grounds sub nom., United States v. Feeney,* 984 F.2d 1053 (9th Cir.1993), the district court considered a similar challenge to a search warrant based, in large part, on evidence of heat emanations from a residence gained through the use of an infrared heat-sensing device. Like the device used in this case, the device in *Penny–Feeney* detected differences in temperature on the surface of objects being observed. Because the device "did no more than gauge and reflect the amount of heat that emanated [ ] from" the residence, the court held there was no intru-

sion into the premises and, thus, the use of the thermal detection device did not constitute a "search" under the Fourth Amendment. *Id.* at 225–26.

The *Penny–Feeney* court further held that even if defendants were capable of demonstrating a subjective expectation of privacy in the "abandoned heat" or "heat waste," there would be no Fourth Amendment violation because, as cases such as *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) suggest, "such an expectation [of privacy] would not be one that society would be willing to accept as objectively reasonable." *Penny–Feeney,* 773 F.Supp. at 226. In *Greenwood,* the United States Supreme Court considered whether the Fourth Amendment prohibits the warrantless search and seizure of bagged garbage left for collection outside a private residence and concluded that the defendants did not have a reasonable expectation of privacy "in the inculpatory items that they discarded." *Greenwood,* 486 U.S. at 39–41, 108 S.Ct. at 1628–29. Similarly, in this case there is no reasonable expectation of privacy in heat which Pinson voluntarily vented outside.

We also find the use of the infrared surveillance analogous to the warrantless use of police dogs trained to sniff and identify the presence of drugs. *See, e.g., United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110 (1983) (the use of nonintrusive equipment, such as a police-trained dog, does not constitute a search for purposes of the Fourth Amendment). Just as odor escapes a compartment or building and is detected by the sense-enhancing instrument of a canine sniff, so also does heat escape a home and is detected by the sense-enhancing infrared camera.

■ We conclude that Pinson did not have a reasonable expectation of privacy in the heat emanated from his home. Here, the FLIR device detected the differences in surface temperature from the heat being cast off or thrown away from the house. In this way, the use of the FLIR device is analogous to

---

**2.** Pinson does not challenge the sufficiency of the affidavit on appeal and we make no determina- tion of that issue.

the detection of odors emanating from luggage or the search of garbage left outside for collection. Any subjective expectation of privacy Pinson may have had in the heat radiated from his house is not one that society is prepared to recognize as "reasonable." The detection of the heat waste was not an intrusion into the home; no intimate details of the home were observed, and there was no intrusion upon the privacy of the individuals within. None of the interests which form the basis for the need for protection of a residence, namely the intimacy, personal autonomy and privacy associated with a home, are threatened by thermal imagery.[3]

Because Pinson failed to show that his subjective expectation of privacy is one that society finds objectively reasonable, his claim that the search warrant was issued in violation of his Fourth Amendment right is denied.

## II.

■ Pinson also contends that the district court erred in failing to grant a downward departure under U.S.S.G. § 5K2.11, which provides that in order to avoid a perceived greater harm, "a reduced sentence may be appropriate, provided that the circumstances significantly diminish society's interest in punishing the conduct." However, "[w]here the interest in punishment or deterrence is not reduced, a reduction in sentence is not warranted." *Id.* Here, Pinson contends that his marijuana cultivation and use avoided the perceived greater harm of his suffering from asthma.

Pinson contends the district court abused its discretion in denying a sentence reduction on this basis because the court mistakenly construed his motion for downward departure as premised on U.S.S.G. § 5K1.1, rather than § 5K2.11. Therefore, according to Pinson, in the absence of a request for a reduc-

tion in sentence from the United States Attorney, as required by § 5K1.1, the court felt powerless to grant the motion.

The statute under which Pinson was convicted of manufacturing in excess of 100 marijuana plants provides for a mandatory minimum sentence of five years. *See* 21 U.S.C. § 841(b)(1)(B)(vii). A district court may depart below a statutory mandatory minimum only upon a motion by the government under 18 U.S.C. § 3553(e).[4] *See United States v. Rodriguez–Morales,* 958 F.2d 1441, 1445 (8th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 375, 121 L.Ed.2d 287 (1992). Because there was no government motion pursuant to section 3553(e), the district court was without authority to depart below the mandatory minimum sentence prescribed by statute and therefore did not err in refusing to do so.

## III.

Based on the foregoing, the conviction and sentence imposed by the district court are affirmed.

---

3. Because we find the use of the infrared device analogous to a canine sniff or a garbage search, we are not persuaded by recent conclusions from other courts which have held that warrantless infrared surveillance violates the Fourth Amendment. *See State v. Young,* 123 Wash.2d 173, 867 P.2d 593 (1994); *United States v. Ishmael,* 843 F.Supp. 205 (E.D.Texas 1994).

4. 18 U.S.C. § 3553(e) provides in relevant part:

(e) **Limited authority to impose a sentence below a statutory minimum.**—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.