In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3190

United States of America,

Plaintiff-Appellee,

v.

Real Property Located at 15324 County Highway E,
Richland Center, Richland County, Wisconsin,
with all appurtenances and improvements
thereon,

Defendant,

Appeal of:  Charles J. Acker,

Claimant-Appellant.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98-C-718-C--Barbara B. Crabb, Judge.

Argued March 1, 2000--Decided July 6, 2000

  Before Eschbach, Coffey, and Diane P. Wood, Circuit
Judges.

  Diane P. Wood, Circuit Judge.  The year 1984 came
and went without the government's transformation
into the ubiquitous and all-seeing Big Brother of
George Orwell's book. (This, at least, is how
everyone but dyed-in-the-wool conspiracy devotees
would characterize things.) But, on the other
hand, the technologies the government has at its
disposal to investigate ordinary citizens become
more sophisticated by the day. This case involved
thermal imaging technology, which the police used
to deduce that Charles J. Acker was running a
substantial marijuana operation from the property
that is the nominal defendant here. Acker was
caught, and in time the government filed a civil
action for forfeiture of his property under 21
U.S.C. sec. 881(a)(7). Acker resisted on the
ground that the use of thermal imaging
constituted a warrantless search. Relying on this
court's decision in United States v. Myers, 46
F.3d 668 (7th Cir. 1995), the district court
rejected his claim. Even Acker concedes that he

must lose if Myers remains good law. We are not persuaded that it should be reconsidered, and we therefore affirm the judgment of the district court.

The underlying facts are typical of these cases. In late 1997, Richland County Deputy Sheriff Rick Wickland received a tip from two confidential informants that Acker was selling large amounts of marijuana. Wickland confirmed that Acker resided at 15324 County Highway E in Richland County, Wisconsin. He next obtained copies of Acker's electric bills for April 1996 through January 1998, and discovered the high usage that usually goes along with indoor cultivation of marijuana.

The next step was a thermal inspection of 15324 County Highway E. Between 1:00 and 1:30 a.m. on March 6, 1998, Wisconsin Department of Narcotics Enforcement Special Agent Peter M. Thelen went to the house. From positions on the road and in a field adjacent to the property, Thelen scanned the residence using a SEEKIR Thermal Imager with an attached 8mm video recorder. He found what he was looking for: the imager showed that large amounts of heat were being vented from the northeast and southeast corners of the basement, and that there was an unexplained heat source under the porch.

Based on those three pieces of information (the CI tips, the utility records, and the thermal imaging results), Wickland obtained a search warrant for Acker's residence. The search yielded packaged marijuana, a triple beam scale, live marijuana plants, 1000 watt lights, box fans, and other materials consistent with a marijuana growing operation. There were three separate "grow" areas in the basement; two of those had exhaust fans that were connected to ducts that vented out the northeast corner of the house. Acker, who was there while the officers executed the warrant, confessed to growing marijuana.

The United States filed the present civil action for forfeiture of the property on October 13, 1998, under 21 U.S.C. sec. 881(a)(7). That statute provides for the forfeiture of property used or intended to be used to commit or facilitate the manufacture, sale, or distribution of a controlled substance. The complaint and warrant of arrest in rem were served on Acker on November 4, 1998. Acker responded immediately with a claim to the property on November 5; he also filed a motion to suppress both the thermal imaging evidence and everything that was collected under the warrant, as well as a motion to dismiss the complaint, on November 25, 1998. With respect to the suppression, he argued that

the thermal imaging itself was an unconstitutional warrantless search, and the evidence collected under the warrant represented the fruits of the first violation.

As Acker acknowledges, this court has already had occasion to consider the question "whether thermal imaging is a search within the meaning of the Fourth Amendment." Myers, supra. On facts remarkably similar to those in Acker's case, we concluded that it was not. We found that Myers did not have a reasonable expectation of privacy in the heat emitted from his home, and that even if he did, such an expectation is not one that society would recognize as reasonable. 46 F.3d at 669-70. Instead, the heat emanations were more like garbage left at the curbside, smoke rising from a chimney, and the scent of drugs dogs can detect in luggage, none of which gives rise to protectible expectations of privacy.

We were also careful in Myers to note that the thermal imaging scanner used there, an Agema 210, was not capable of transmitting images so precise that expectations of privacy might be triggered. Neither it, nor, as far as the record here shows, the SEEKIR Thermal Imager pointed at Acker's house is (as Acker colorfully puts it) the modern equivalent of Superman's X-ray vision. Acker paints a frightening picture of thermal imagers so sensitive that they create a precise video image of every living thing in the house, revealing facial features, body positions, who is walking through a kitchen, and who is in the bedroom engaged in sexual activity. We agree that a device of such power would present important questions under the Fourth Amendment. But, as in Myers, we have no such case before us here.

Acker's lawyers did ask for an evidentiary hearing, in part because they hoped to introduce evidence about the precise capabilities of the SEEKIR Thermal Imager. How, they ask, will anyone know without hearings in these cases when newer devices begin to approach the capabilities of a conventional video camera hidden in the house, or the sophisticated ultrasound equipment in everyday use in hospitals all over the country?

This is an interesting point, but it is unfortunately one that Acker did not make with any clarity before the district court. In order to prevail on a claim that the district court erred in denying him an evidentiary hearing, Acker must show that the parties disputed material issues of fact. United States v. Torres, 191 F.3d 799, 811 (7th Cir. 1999). That burden may be met only by showing "definite, specific, detailed, and nonconjectural facts." Id. (citing United States v. Rodriguez, 69 F.3d 136, 141 (7th

Cir. 1995) (internal quotations omitted)). If Acker had wanted to pursue the possibility left open in Myers, he should have proffered evidence suggesting that the capabilities of the SEEKIR were sufficiently better than those of the device in Myers such that the Fourth Amendment analysis would be affected. He did not, and even now, his suggestion that such evidence might exist is sheer speculation.

At the time this court decided Myers, the Eighth and the Eleventh Circuits had already come to the same conclusion about thermal imaging scans--that they were not "searches" within the meaning of the Fourth Amendment. See United States v. Pinson, 24 F.3d 1056 (8th Cir. 1994); United States v. Ford, 34 F.3d 992 (11th Cir. 1994). Since then, the Fifth and the Ninth Circuits have agreed with this position. See United States v. Ishmael, 48 F.3d 850 (5th Cir. 1995); United States v. Kyllo, 190 F.3d 1041 (9th Cir. 1999). No one has come to the opposite conclusion, except the Tenth Circuit briefly, in United States v. Cusumano, 67 F.3d 1497 (10th Cir. 1995), in an opinion that was quickly vacated, and on rehearing en banc that issue was not decided. See 83 F.3d 1247 (10th Cir. 1996). On the present record, and bearing in mind the type of technology the police here used, we have no inclination to break ranks with all our sister circuits and our own precedent. Myers remains good law, and the district court correctly recognized that it required the rejection of Acker's effort to suppress the evidence.

The judgment of the district court is Affirmed.