UNITED STATES of America,
Plaintiff,

v.

REAL PROPERTY LOCATED AT 15324 COUNTY HIGHWAY E, RICH-LAND CENTER, RICHLAND COUN-TY, Wisconsin, with all Appurte-nances and Improvements Thereon, Defendant.

No. 98–C–0718–C.

United States District Court,
W.D. Wisconsin.

March 14, 2002.

Daniel J. Graber, Goshen, IN, for Plain-tiff.

Ralph A. Kalal, Kalal & Associates, Madison, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

This civil forfeiture action is before the court after remand from the United States Supreme Court. The government filed the case originally in October 1998 and served claimant Charles Acker with a complaint and warrant of arrest in rem shortly thereafter. Claimant moved to suppress evidence of his violation of the controlled substances laws, 21 U.S.C. §§ 881–904, and to dismiss the complaint, contending that forfeiture was improper because the government had violated his constitutional rights under the Fourth Amendment by conducting thermal imaging of his property without obtaining a search warrant.

Claimant's motions were dismissed in this court in reliance on the holding of the Court of Appeals for the Seventh Circuit in *United States v. Myers*, 46 F.3d 668 (7th Cir.1995), that thermal imaging scanning is not a search within the meaning of the Fourth Amendment. The government proceeded to forfeiture pursuant to 21 U.S.C. § 881(a)(7), which provides for the forfeiture of property used to commit the crime of manufacture, sale or distribution of a controlled substance. It obtained a judgment of forfeiture on August 9, 1999, on its showing that claimant had used the property at issue for the manufacture of marijuana on a large scale. Claimant appealed from the judgment on August 26, 1999. On July 6, 2000, the court of appeals affirmed the dismissal of claimant's motions, reiterating its holding in *Myers*. Claimant then filed a petition for a writ of certiorari in the United States Supreme Court, which vacated the judgment entered in this court after having decided in *Kyllo v. United States*, 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), that the warrantless use of thermal imaging equipment to scan a home is a violation of the Fourth Amendment. The Court remanded the case to the court of appeals, which solicited statements from counsel pursuant to Circuit Rule 54. The government argued that the initial forfeiture should be affirmed because the affidavit in support of the application contained sufficient probable cause independent of the tainted evidence (the thermal imaging scan). Claimant disagreed, arguing that the warrant issued "almost entirely upon the fruit of an unlawful search conducted by thermal imaging surveillance of [claimant's] house."

The court of appeals decided that it could not resolve the dispute between the parties without remanding the case to this court for an evaluation of the sufficiency of the affidavit supporting the search warrant, setting aside the thermal imagining evidence. That issue has been briefed and is now before the court on plaintiff's motion for summary judgment and claimant's motion to suppress the evidence seized pursuant to the search warrant and his cross motion for summary judgment. The government contends that even if the affidavit fails to establish probable cause for the issuance of the warrant, the forfeiture should be affirmed because the law enforcement officers acted in good faith under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), when they conducted the scan and relied on it in their application for the search warrant. The relevant facts are contained in the affidavit, which is part of the record.

## CONTENTS OF AFFIDAVIT

The affidavit contained the following information, supplied and sworn to by Richland County Deputy Sheriff Rick Wickland.

(1) A citizen had approached the affiant nine months earlier to say that "Chuck Acker sells a lot of marijuana" and that Acker lived in Sylvan Township in Richland County. Wickland verified claimant's

address and determined that he lived in Sylvan Township.

(2) A confidential informant had approached Wickland about three months earlier and had said that his neighbor bought large marijuana buds from a guy known as Chuck, who lived near Highway 14, close to the Richland–Vernon county line. According to Wickland, the informant had participated in "three separate controlled substance situations" and Wickland had independently verified the informant's information in the past and found it to be reliable. Wickland verified that claimant lived about two miles from the county line.

(3) Claimant's electrical history records for the period April 1996 to January 1998, showed high usage no lower than 1300 kilowatt hours and a maximum of 3090 hours in May 1996. Wickland's training and knowledge had taught him that the average usage per household runs 1200 to 1500 kilowatt hours and that high usage numbers are consistent with persons with indoor marijuana grows.

(4) Wickland had been informed by a special agent of the Wisconsin Division of Narcotics Enforcement that claimant's father raised orchids and that orchids are raised in a controlled hydroponic grow operation.

(5) Wickland and DNE agents had taken thermal imaging scans of claimant's house and obtained results that showed uneven heat generation consistent with an indoor marijuana operation.

(6) Wickland had observed claimant's house two days earlier and had noticed that two basement windows appeared to be very dark or blocked out, which in the opinion of the DNE agent was consistent with a marijuana grow.

## OPINION

Claimant argues that the focal point of the analysis must be on the warrantless search (the imaging scan) and not on the warrant that issued later. In his view, the court must decide whether the evidence ultimately seized is the tainted fruit of the warrantless search and to do this, the court must decide not merely whether Wickland could have obtained a search warrant without the tainted evidence but whether he would have done so. For this proposition, he cites *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988), and *United States v. Markling*, 7 F.3d 1309 (7th Cir.1993). In *Markling*, the court of appeals held that when a court evaluates the validity of a search undertaken pursuant to a search warrant based upon illegally obtained evidence, it must decide first, whether the illegally obtained evidence affected the magistrate's decision to issue the search warrant and second, whether the law enforcement officer would have applied for the warrant if he had not searched the premises illegally beforehand. In other words, claimant is asking the court to evaluate the sufficiency of the affidavit for the search warrant by first determining whether there would be probable cause for issuance of a warrant after excising all the information relating to the thermal imaging scan and then determining whether even if there were probable cause, Wickland would have applied for the warrant had he not had that information.

■ Answering the first question obviates answering the second, because the warrant application lacks a showing of probable cause without the thermal imaging evidence. Reduced to its elements, all it contains are the vague statements of two confidential informants "corroborated" by information that is in the public record. Wickland provided no information that would have permitted the issuing magistrate to evaluate the credibility of the informants. He did not say how the first

informant obtained his knowledge that Chuck Acker was selling lots of marijuana. Wickland's characterization of this informant as a "citizen informant" seems to imply that he or she was not a customer of Acker's or otherwise involved in Acker's alleged criminal conduct. In that case, where did the informant obtain his information? How reliable was the informant's source? Saying that the informant had never provided false information tells the judge nothing. Perhaps this was the first time the citizen informant had ever provided any information of any kind. More to the point, it is not the informant's credibility that is important; it is the credibility of his or her source. How did the source come by his or her knowledge? How reliable is the source? Merely confirming that claimant lived in Sylvan Township does not supply the corroboration that might substitute for what Wickland leaves unsaid about his informant and his or her source; anyone could have secured the same information from public records.

The information from the second informant is similarly flawed. Wickland does not explain how the informant knew that his neighbor was buying marijuana from someone named Chuck. Saying that the informant had provided information on three occasions that had proved reliable does not tell the judge anything about the nature of the information, such as whether it led to an arrest or whether it was merely tangential to an investigation. More important, it is not the informant's credibility that is relevant; it is the neighbor's, who presumably was the source of the informant's tip. Wickland provides no information about her reliability. Confirming that claimant is named Chuck and that he lives within two miles of the county line is not corroboration that has any real value, given the probability that many persons named Chuck live within two miles of the approximately 26–mile–long Richland–Vernon county line. (Wickland does not even say that he had confirmed that claimant's residence was near Highway 14.)

Wickland's information about electrical usage is not enough to save his application. The conclusory statement that claimant was using twice as much electricity as the "average household" is not helpful to the issuing judge without any information about the average household. Is Wickland comparing average farm households of a similar size and age or simply lumping together all living units of any size, urban or rural?

The blocking out of two basement windows adds little to the sufficiency of the affidavit. Many people never clean their basement windows. Many block them with heating pipes, storage units or energy-saving coverings.

Finally, there is the statement that claimant's father grows orchids in a hydroponic operation. Presumably, Wickland was implying that marijuana is grown in the same way, although he did not say so, and that claimant would have learned the principles of hydroponic growing from his father. If so, he never drew that connection for the judge.

In summary, Wickland's affidavit rested heavily on the thermal imaging evidence. Without that, he had only rumors, innocuous information about covered up windows and the allegedly higher than average electrical use. These do not add up to probable cause, whether considered as individual pieces of information or in their totality. *See United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (in determining existence of reasonable suspicion to make vehicle stop, reviewing courts must look at totality of circumstances apparent to detaining officer); *Illinois v. Gates,* 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (probable cause determinations guided by totality-of-the-circumstances analysis). The government does

not suggest that electricity usage alone could support the issuance of a search warrant. If it could, law enforcement officers could limit their investigative work to the records of the local utility.

■ Because I conclude that the affidavit is too thin to support the issuance of a search warrant without the information gained from the thermal imaging, it is unnecessary to go on to the next question, which is whether Wickland would have applied for the warrant. I believe it is appropriate, however, to address the question of the good faith exception, although this was not an explicit part of the court of appeals' remand.

In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court held that evidence obtained in the execution of a facially valid warrant will not be suppressed unless one of four circumstances is present: the issuing magistrate relied upon a deliberately false affidavit or one that was recklessly false; the magistrate failed to act in a neutral or detached manner; the warrant was based on an affidavit so lacking in indicia of probable cause as to make official belief in its existence entirely unreasonable; or the warrant was so facially deficient that an officer could not reasonably have believed it to be true. *Id.* at 923, 104 S.Ct. 3405. Claimant has not argued that any of these exceptions to the good faith doctrine apply. Instead, he argues that the doctrine does not apply because the thermal imaging search was conducted without a warrant and *Leon* applies only to searches conducted pursuant to warrants.

Claimant's argument is unavailing in light of *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987), in which the Supreme Court held that the good faith doctrine applies to officers conducting warrantless searches in reliance on a statute later held to be unconstitutional. Although Richland County relied on case law rather than a statute when it conducted its warrantless thermal imaging search and used the results in an application for a search warrant, the distinction is immaterial. In either event, the analysis and the result would be the same: would suppressing the evidence obtained in the search advance the deterrence purposes of the exclusionary rule? If not, then the search results would not be suppressed.

When the officers conducted the thermal imaging of claimant's property in the spring of 1998, they were justified in believing that they did not need a warrant for doing so and that they could use the results of the imaging in applying for a search warrant for the interior of a residence. At the time, the law in this circuit and in most others was that thermal imaging was not a search within the meaning of the Fourth Amendment. The officers were acting in accordance with the law announced by the highest court to have ruled on the question.

■ The exclusionary rule uses suppression of evidence as a means of deterring lawlessness on the part of law enforcement officers; it is not intended to suppress evidence obtained by officers who were acting in conformity with the law when they conducted their search. *See Krull,* 480 U.S. at 348–49, 107 S.Ct. 1160 ("because the purpose of the exclusionary rule is to deter police officers from violating the Fourth Amendment, evidence should be suppressed 'only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment' ") (quoting *United States v. Peltier,* 422 U.S. 531, 542, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)). I conclude that the good faith exception to the exclusionary rule applies to the thermal imaging scan of

claimant's residence and to Wickland's use of the results of that scan in his affidavit in support of the application for a search warrant. Accordingly, the government's motion for summary judgment will be granted and claimant's denied.

### ORDER

In accordance with the directions of the Court of Appeals for the Seventh Circuit in remanding this case, I find that claimant is correct in arguing that without the thermal imaging scans, the affidavit in support of the application for a warrant lacked probable cause but I find that he is not entitled to relief because of the good faith doctrine, which bars suppression of evidence that was obtained by law enforcement officers acting in accordance with the law as it was understood at the time. The motion of the government for summary judgment is GRANTED; the motion of claimant Charles Acker is DENIED, as is claimant's motion to suppress evidence.