In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-1737

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

REAL PROPERTY LOCATED AT
15324 COUNTY HIGHWAY E.,
RICHLAND CENTER, RICHLAND
COUNTY, WISCONSIN,

*Defendant,*

and

CHARLES J. ACKER,

*Claimant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 98 C 718—**Barbara B. Crabb**, *Chief Judge.*

ARGUED DECEMBER 5, 2002—DECIDED JUNE 18, 2003

Before BAUER, DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* Appellant Charles J. Acker challenges the district court's denial of his motion to suppress evidence and resulting order of forfeiture to the United States of his house consequent to the discovery therein of a marijuana cultivation and distribution opera-

tion. Acker claims that evidence of his violations of federal controlled substance laws should have been excluded from the forfeiture proceeding because law enforcement agents searched his residence in violation of his Fourth Amendment rights. Because we conclude that law enforcement agents acted in objectively reasonable reliance upon a warrant issued in accordance with the law as it then existed, and that, therefore, the evidence is not subject to suppression, we affirm the decision of the district court.

## BACKGROUND

In March 1998, during the course of their investigation of Acker's suspected marijuana cultivation and distribution activities, Wisconsin Division of Narcotics Enforcement ("DNE") Special Agent Pete Thelen and Richland County Deputy Sheriff Rick Wickland scanned Acker's house for thermal images without first obtaining a search warrant. Thelen, a certified thermographer, concluded that the uneven heat fields radiating from the house were consistent with the heat typically generated from an indoor marijuana growing operation.[1]

In addition to the thermal imaging data, Wickland included the following information in an affidavit in support of probable cause to search Acker's house: (i) that a confidential informant told Wickland in July or August 1997 that "Chuck Acker sells a lot of marijuana" and lives in Sylvan Township in Richland County, and that Wickland independently verified that Charles J. Acker lived at 15432 County Highway E., Richland Center, Sylvan Township, Richland County; (ii) that, in December 1997, a

---

[1] Elevated heat levels are a product of the powerful lights used to enable photosynthesis and to control the timing of growth cycles during indoor plant cultivation.

second confidential informant, whose reliability Wickland had ascertained from the informant's cooperation with authorities on three previous occasions, stated that a neighbor purchased marijuana from an individual known as "Chuck" living near both Highway 14 and the Richland/ Vernon county line, and that Wickland independently verified that Acker's residence was located within two miles of the county line; (iii) that Acker's electrical records for the period April 1996 to January 1998 indicated usage hours that, based on Wickland's cannabis enforcement training, he knew to be consistent with usage patterns associated with indoor growing operations; (iv) that DNE Special Agent Loreen Tryba informed Wickland that Acker's father cultivated orchids using a controlled hydroponic system; and (v) that surveillance of Acker's residence revealed that the basement windows were "blocked out," which, in Thelen's opinion, was consistent with efforts typical of indoor marijuana growers to prevent heat emanation. On the basis of Wickland's affidavit, a Wisconsin Circuit Court judge in Richland County signed a search warrant authorizing the Richland County Sheriff's Department to search Acker's residence.

During their execution of the search warrant, law enforcement officers seized 40 cannabis plants, 2955 grams of harvested marijuana, 86.5 grams of processed marijuana packaged in sealable plastic bags, seven bags of starter soil, four 1000-watt lights with ballasts, five light timers, two exhaust fans, a triple-beam scale, notes and a notebook describing the growing operation, and drug paraphernalia. DNE agents advised Acker of his constitutional rights, which he waived in writing prior to stating that he had cultivated cannabis in his house continuously during the previous 18 months, selling 30 to 40 ounces per four-month harvest cycle for approximately $175 per ounce.

In October 1998, the government filed a civil action for the forfeiture of Acker's house pursuant to 21 U.S.C. § 881,

which provides, in relevant part, for the forfeiture to the United States of property used in the commission of federal controlled substance violations punishable by more than one year of imprisonment.[2] Acker moved to suppress evidence of his violation and to dismiss the complaint, asserting that the thermal imaging scan, conducted without a search warrant, amounted to an unreasonable search in violation of his Fourth Amendment rights. In denying Acker's motions, the district court followed this Court's holding in *United States v. Myers* that "thermal imaging scanning does not constitute a search within the meaning of the Fourth Amendment." 46 F.3d 668, 669 (7th Cir. 1995). This Court affirmed the district court's resulting judgment of forfeiture. *United States v. 15324 County Highway E.*, 219 F.3d 602 (7th Cir. 2000).

In 2001, the United States Supreme Court granted Acker's petition for certiorari and, on the basis of its decision in *Kyllo v. United States*, 533 U.S. 27, 36 (2001)

---

[2] Relevant provisions of Title XXI of the United States Code include the following:

> All real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this subchapter punishable by more than one year's imprisonment . . . shall be subject to forfeiture to the United States and no property right shall exist in [it].

21 U.S.C. § 881(a)(7) (2003). Based solely on the quantity of marijuana seized from Acker's home (excluding the distribution of additional quantities admitted in his statements to DNE agents), his manufacture and possession of a controlled substance with intent to distribute is punishable by as many as five years' imprisonment. *See id*. § 841(a),(b)(1)(D).

(holding that warrantless "thermal-imaging observations of the intimate details of a home are impermissible"), vacated this Court's affirmance and remanded the case for our further consideration. *Acker v. United States*, 533 U.S. 913 (2001). Noting in an unpublished opinion that, after *Kyllo*, "our decisions in *Myers* and in the present case can no longer stand," this Court vacated the district court's judgment and remanded the case for further district court proceedings consistent with the holding of *Kyllo*.

On remand, the district court considered the sufficiency of the affidavit absent the thermal imaging evidence and concluded that it did not establish probable cause. It did determine, however, that the officers conducting the thermal imaging scan acted in good-faith reliance upon the law then in force under *Myers* and, analogizing to *Illinois v. Krull*, 480 U.S. 340 (1987) (holding that evidence seized by officers acting in good-faith reliance upon statute authorizing warrantless administrative searches— later invalidated on constitutional grounds—is not subject to the exclusionary rule), applied the good-faith exception to the exclusionary rule as originally articulated in *United States v. Leon*, 468 U.S. 897 (1984). As a result, the district court again denied Acker's motions to suppress and to dismiss and granted the district court's motion for summary judgment, thereby ordering the forfeiture of Acker's house.

This appeal ensued.

## ANALYSIS

Ordinarily, evidence obtained in contravention of the Fourth Amendment's prohibition on unreasonable searches and seizures is subject to exclusion from the prosecution's case-in-chief. *Mapp v. Ohio*, 367 U.S. 643 (1961). In *Leon*, the United States Supreme Court established an exception to this exclusionary rule in cases where, notwith-

standing a conceded Fourth Amendment violation, law enforcement officers have acted in good-faith reliance upon a search warrant validly issued by a detached and neutral magistrate. 468 U.S. at 927 (BLACKMUN, J., concurring in judgment). The Court reasoned that the suppression of evidence obtained through magistrate error inadequately served the exclusionary rule's underlying purpose: to deter law enforcement agents from overstepping the bounds of the Fourth Amendment. *Id.* at 921 (observing that "penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations").

Premised, as it is, on a law enforcement agent's good-faith reliance on a search warrant, the *Leon* exception is inapplicable, and suppression is therefore appropriate, in any of the following circumstances: (i) in issuing the search warrant, the magistrate relied on an affidavit that the affiant knew was false or would have known was false but for his or her recklessness; (ii) the magistrate wholly abandoned his or her detached and neutral judicial role; (iii) the affidavit's dearth of reliable indicia of probable cause renders official belief in its existence entirely unreasonable; or (iv) the affidavit is so facially deficient that executing agents could not reasonably presume it to be valid. *Id.* at 923 (internal citations omitted).

The Supreme Court subsequently extended the applicability of the *Leon* good-faith exception to situations where a law enforcement agent conducts a warrantless administrative search in objectively reasonable reliance upon an authorizing statute that is later declared unconstitutional, reasoning that suppression of evidence seized in such manner "would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant." *Krull*, 480 U.S. at 349-50.

In support of his motion to suppress, Acker argued that the evidence seized pursuant to the search warrant was the tainted fruit of the initial warrantless thermal imaging scan. He urged the district court to exclude the evidence based on an application of the "independent source" doctrine, articulated in *United States v. Murray*, 487 U.S. 533 (1988). In that case, federal agents observed bales of marijuana inside a warehouse after their warrantless forced entry thereto; then, neither disclosing the illegal search to the issuing magistrate nor relying on evidence observed therein, they obtained and executed a warrant to search the warehouse. The Supreme Court explained that the controlling issue in determining the admissibility of evidence seized pursuant to the warrant (assuming, of course, that alternative, legally obtained evidence presented to the magistrate established the existence of probable cause) was not whether the agents *could* have obtained a search warrant absent the illegally observed evidence, but rather, whether they *would* have sought one absent their knowledge of its existence. *Murray*, 487 U.S. at 543. If, on remand, the district court found that agents otherwise would not have sought the search warrant, then it should exclude the evidence as lacking a source independent from the illegal search. Applying the *Murray* independent source doctrine in a later case, this Court clarified that the analysis raises two questions, the first being "whether the illegally obtained evidence affected the magistrate's decision to issue the search warrant," and the second, whether the agent's decision to seek the warrant was motivated by his knowledge of that evidence. *United States v. Markling*, 7 F.3d 1309, 1315-16 (1993).

The district court implicitly entertained Acker's invocation of the independent source doctrine in its statement that "resolving [*Markling's*] first question obviates answering the second, because the warrant application lacks a

showing of probable cause." Rather than suppress the evidence, however, the district court cited *Krull* as authority for application of the good-faith exception to the exclusionary rule, finding that Wickland and Thelen scanned Acker's residence in objectively reasonable reliance upon this Court's decision in *Myers*. Though it acknowledged the distinction between these agents' reliance on case law and the *Krull* agents' reliance on statute, the district court dismissed it as immaterial: "In either event, the analysis and result would be the same: would suppressing the evidence obtained in the search advance the deterrence purposes of the exclusionary rule? If not, the search results would not be suppressed." The district court concluded that Wickland and Thelen acted in conformity with the law and therefore applied the good-faith exception in order to deny Acker's motion to suppress.

In our review, for plain error, of the district court's application of the good-faith exception, *United States v. Spry*, 190 F.3d 829, 834 (7th Cir. 1999) (citation omitted), we need not decide—and afford the district court a presumption of correctness with respect to—the issue of the (non)existence of probable cause, *see United States v. Fairchild*, 940 F.2d 261, 264 (7th Cir. 1991) (assuming without deciding that officer's affidavit failed to establish probable cause, but holding that good-faith exception applied).

Although the good-faith exception is the proper basis, generally speaking, for refusing to suppress evidence seized from Acker's residence, we reject the district court's assignment of undue analytical weight to the agents' reliance upon *Myers* to conduct the thermal imaging scan and, accordingly, its inapposite analogy to *Krull*. Rather, under a more conventional *Leon* analysis, resort to the exception is compelled by the agents' reasonable reliance upon a validly issued search warrant to seize the challenged evidence.

To defeat the application of the good-faith exception to the evidence seized in violation of his Fourth Amendment rights under *Kyllo* but pursuant to a validly issued search warrant, Acker must demonstrate some misconduct on the part of law enforcement agents.[3] He has made no such showing. Significantly, the affidavit in support of probable cause that Wickland presented to the state court judge explicitly mentioned the thermal imaging scan; that is, the source and substance of the evidence in question. Although the Supreme Court would eventually declare such warrantless use of thermal imaging unconstitutional, it did not do so until June 2001, more than three years later. Moreover, the state court judge implicitly sanctioned the agents' actions in his finding of probable cause and resulting issuance of the search warrant. Thus, to the extent that any actor can be said to have been at fault, it was not the officers who sought, obtained, and executed the warrant, but rather the magistrate who, lacking the requisite prescience (not to mention authority, given *Myers*) to declare the unconstitutionality of the scan, relied on the then-controlling precedent to deny its issuance. On the other hand, the belief of an officer—warrant-in-hand—that probable cause existed to search Acker's residence was entirely reasonable. In this respect, the case

---

[3] Since the Fourth Amendment does not expressly preclude the use of evidence obtained through its violation, and thus inclusion of such evidence works no new Fourth Amendment wrong, the exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon*, 468 U.S. at 906 (quoting *United States v. Calandra*, 414 U.S. 338, 348, 354 (1974). Moreover, application of the rule has been "limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of *police* misconduct." *Id.* at 910 (internal citations omitted) (emphasis added).

is distinguishable from a traditional "tainted warrant" case, such as *Murray*, where agents conceal known or reasonably knowable Fourth Amendment violations from the issuing magistrate. Here, by contrast, after disclosing fully their antecedent actions, law enforcement agents properly left the probable cause determination, and its attendant constitutional and precedential considerations, to the better judgment of the magistrate. This distinction is important for two closely related reasons. First, any error that is said to have occurred must be attributed to the magistrate, and not law enforcement agents, for the former was in a relatively better position to divine the as-yet unannounced unconstitutionality of the thermal imaging scan. Second, the candor of police with respect to the scan precludes a court's refusal to apply the good-faith exception on the basis of police dishonesty or recklessness before the issuing magistrate, the first of the four enumerated situations in which the exception will not apply.[4] Both points highlight the reality that exclusion of the challenged evidence would not adequately advance the purpose of deterring police misconduct, but rather would penalize police for magistral mistake.[5]

That the preceding analysis obviates the district court's direct analogy to *Krull* is neither inadvertent nor inconse-

---

[4] Nor does Acker contend, nor do the facts indicate, that the magistrate wholly abandoned his detached and neutral judicial role, that the affidavit utterly lacked reliable indicia of probable cause such that officers' belief in its existence was entirely unreasonable, or that the affidavit was so facially deficient that executing agents could not reasonably have presumed its validity.

[5] Although *Krull* does not control our disposition of this case, its rationale is nonetheless instructive: "In determining whether to apply the exclusionary rule, a court should examine whether such application will advance the deterrent objective of the rule." 480 U.S. at 353.

quential. We decline to extend further the applicability of the good-faith exception to evidence seized during law enforcement searches conducted in naked reliance upon subsequently overruled case law—as distinguished from the subsequently invalidated statute at issue in *Krull*—absent magistrate approval by way of a search warrant. Such expansion of the good-faith exception would have undesirable, unintended consequences, principal among them being an implicit invitation to officers in the field to engage in the tasks—better left to the judiciary and members of the bar more generally—of legal research and analysis. Accordingly, we hold that evidence seized by law enforcement agents acting in objectively reasonable reliance upon a validly issued search warrant that, through no misconduct on the part of the agents, rests on a constitutionally flawed probable cause finding owing to a subsequent change in controlling judicial precedent, is not subject to the exclusionary rule.

## CONCLUSION

Because we find no reversible error in the district court's application of the good-faith exception to the exclusionary rule, we AFFIRM the order denying Acker's motion to suppress evidence of violations of controlled substance laws and granting summary judgment in favor of the United States.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—6-18-03